UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSIE HAYNES,<br><br>       Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>       Defendant. | Case No. EDCV 15-1058 JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

## I.    SUMMARY

On May 29, 2015, Susie Haynes ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; June 2, 2015 Case Management Order ¶ 5.

///

///

1

1  Based on the record as a whole and the applicable law, the decision of the
2  Commissioner is REVERSED AND REMANDED for further proceedings
3  consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On January 4, 2012, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits. (Administrative Record ("AR") 189, 191). Plaintiff asserted that she became disabled on May 14, 2011, due to depression, seizures, joint problems, arthritis, high blood pressure, asthma, heart burn, and attention deficit disorder. (AR 16, 211-12). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on July 3, 2013. (AR 35-66).

On July 26, 2013, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 16-30). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: arthritis with degenerative joint disease in the knees and possible degenerative joint disease in the ankles, hypertension, asthma, left carpal tunnel syndrome, obstructive sleep apnea, right trigger thumb, obesity, cognitive disorder, learning disorder, mood disorder, depression, and history of attention deficit hyperactivity disorder (AR 18-19); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 19-20); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b), 416.967(b)) with additional limitations[1] (AR 20-21); (4) plaintiff could not

---

[1]The ALJ determined that plaintiff: (i) could stand and/or walk four hours during an eight-hour workday; (ii) could occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds; (iii) could occasionally balance, stoop, kneel, crouch, and crawl; (iv) could use the non-dominant left upper extremity for frequent handling; (v) needed to avoid
(continued...)

perform any past relevant work (AR 28); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically cashier II, small products assembler, and electronics assembler (AR 29-30); and (6) plaintiff's allegations regarding the intensity, persistence, and limiting effects of her subjective symptoms were not entirely credible (AR 23).

The Appeals Council denied plaintiff's application for review. (AR 4).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

---

(...continued)
concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; (vi) needed to avoid working around unprotected heavy machinery and unprotected heights; (vii) could understand, remember, and carry out simple job instructions, but was unable to perform work that would require directing others, abstract thought, or planning; (viii) could maintain attention and concentration to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements; and (ix) could work in an environment with occasional changes to the work setting and occasional work-related decision making. (AR 20-21).

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

(9th Cir. 1995)). Courts review only the reasons provided in the ALJ's decision, and the decision may not be affirmed on a ground upon which the ALJ did not rely. See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)). To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). A denial of benefits must be upheld if the evidence could reasonably support either affirming or reversing the ALJ's decision. Robbins, 466 F.3d at 882 (a court may not substitute its judgment for that of the ALJ) (citing Flaten, 44 F.3d at 1457); see also Molina, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.") (citation omitted).

Even when an ALJ's decision contains error, it must still be affirmed if the error was harmless. Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014). An ALJ's error is harmless if (1) it was inconsequential to the ultimate nondisability determination; or (2) the ALJ's path may reasonably be discerned, even if the ALJ explains the ALJ's decision with less than ideal clarity. Id. (citation, quotation marks, and internal quotations marks omitted).

A reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless.

Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended) (citations omitted); see also Marsh v. Colvin, 792 F.3d 1170, 1172 (9th Cir. 2015) (district court may not use harmless error analysis to affirm decision on ground not invoked by ALJ) (citation omitted).  Where a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate.  See Marsh, 792 F.3d at 1173 (remanding for additional explanation where ALJ ignored treating doctor's opinion and court could not confidently conclude ALJ's error was harmless); Treichler, 775 F.3d at 1099-1102 (where agency errs in reaching decision to deny benefits and error is not harmless, remand for additional investigation or explanation ordinarily appropriate).

## IV.  DISCUSSION

Plaintiff contends that a remand is warranted, in part, because the ALJ failed properly to consider the medical opinion evidence and, in turn, the ALJ's non-disability determination at step five was not supported by substantial evidence.  The Court agrees that a remand is warranted because the ALJ erred at step five and the Court cannot find the error harmless.

### A.  Pertinent Law
#### 1.  Medical Opinion Evidence

In Social Security cases, courts give varying degrees of deference to medical opinions depending on the type of physician who provided them, namely "treating physicians," "examining physicians," and "nonexamining physicians." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted).  As a general rule, opinions from treating physicians are given the greatest weight "[b]ecause treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual. . . ." Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).  An examining, but non-treating physician's opinion is entitled to less weight than a

treating physician's, but more weight than a nonexamining physician's opinion. Garrison, 759 F.3d at 1012 (citation omitted).

An ALJ may reject a nonexamining physician's opinion "by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998). Although an ALJ is not bound by the opinions of a nonexamining physician, the ALJ may not ignore such opinions and "must explain the weight given to the opinions" in the ALJ's decision. Chavez v. Astrue, 699 F. Supp. 2d 1125, 1135 (C.D. Cal. 2009) (citations and quotation marks omitted).

### 2. Step Five

At step five, the Commissioner has the burden to show that other work exists in significant numbers in the national economy that the claimant can do, taking into account the claimant's residual functional capacity, age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(a)(4)(v) & (g), 404.1560(c); 20 C.F.R. §§ 416.920(a)(4)(v) & (g), 416.960(c); see Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (describing "legal framework for Step Five") (citations omitted). The Commissioner may satisfy this burden, depending on the circumstances, either by (1) referring to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"); or (2) calling a vocational expert to testify about specific representative occupations that a claimant could perform in light of the claimant's residual functional capacity, as well as the availability of such jobs in the national economy. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1100-01).

The Dictionary of Occupational Titles ("DOT") is the Social Security Administration's "primary source of reliable [] information regarding jobs that exist in the national economy." Zavalin, 778 F.3d at 846 (citing Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R. §§ 416.969, 416.966(d)(1)) (internal quotation marks omitted). When a vocational expert is called to testify at

a claimant's hearing, the ALJ has an "affirmative responsibility" to identify and resolve any possible conflicts between the vocational expert's opinions and the DOT. Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling ("SSR") 00-4p). To that end, an ALJ must (1) ask the vocational expert whether there is a conflict between the expert's opinions and the DOT requirements for a particular occupation; (2) "obtain a reasonable explanation for any apparent conflict"; and (3) explain in the decision how the ALJ resolved any such conflict. Id. While a vocational expert's opinions "generally should be consistent" with the DOT, neither the DOT nor a vocational expert's testimony "automatically 'trumps'" in the case of a conflict. Id. at 1153 (quoting SSR 00-4p) (internal quotation marks omitted). Thus, when there is an apparent inconsistency between a vocational expert's testimony and the DOT, an ALJ may not rely on the vocational expert's opinions at step five unless the ALJ has adequately resolved the inconsistency. Rounds v. Commissioner Social Security Administration, 807 F.3d 996, 1003 (9th Cir. 2015) (noting "apparent conflict" between vocational expert and DOT where, among other things, expert testifies "that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle. . .") (citations and quotation marks omitted); see also Zavalin, 778 F.3d at 846 ("ALJ's failure to resolve an apparent inconsistency may leave . . . a gap in the record that precludes [court] from determining whether the ALJ's decision is supported by substantial evidence") (citing Massachi, 486 F.3d at 1154).

      An ALJ's failure properly to address an apparent inconsistency between a vocational expert and the DOT may be considered harmless error, but only if (1) there, in fact, was no conflict; or (2) the vocational expert's testimony, or the record as a whole, contains "persuasive evidence" that adequately justifies any conflicts. Massachi, 486 F.3d at 1154 n.19; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); see, e.g., Buckner-Larkin v. Astrue, 450 Fed. Appx. 626,

628-29 (9th Cir. 2011) (conflict between DOT and vocational expert testimony adequately addressed where vocational expert reasonably explained that deviation "was based on his own labor market surveys, experience, and research" and ALJ's decision addressed explanation).

### B.  Analysis

In a Physical Residual Functional Capacity Assessment report dated March 18, 2013, Dr. Navjeet Singh, a state agency medical consultant, opined, among other things, that plaintiff needed to avoid "[r]epetitive handling movements . . . on the left [upper extremity] due to [carpal tunnel syndrome]" ("Dr. Singh's Opinion"). (AR 380). The ALJ's decision failed properly to account for the functional limitation reflected in Dr. Singh's Opinion. As the Court cannot find the ALJ's error harmless, a remand is warranted.

First, the ALJ gave "significant weight" to the opinions of Dr. Singh (AR 27), but neither the ALJ's residual functional capacity assessment for plaintiff nor the hypothetical question the ALJ posed to the vocational expert at the hearing expressly required avoidance of "repetitive handling" in accordance with Dr. Singh's Opinion. (AR 20-21, 61-65, 380). Defendant argues that by limiting plaintiff to "frequent handling" the ALJ properly resolved differences between Dr. Singh's Opinion and "all the other State agency . . . consultants" who found "[no] manipulative limitations" at all. (Defendant's Motion at 2) (citing AR 20-28, 75, 89, 105, 119, 328, 380). Work that is limited to "<u>frequent</u> handling," however, does not necessarily avoid tasks that involve "[r]epetitive" handling. See, e.g., Everett v. Astrue, 2012 WL 1965958, *14 (E.D. Cal. May 31, 2012) (noting "definitions of frequent and repetitive in the social security context are distinct") (citing Gardner v. Astrue, 257 Fed. Appx. 28, 30 n.5 (9th Cir. 2007) (explaining distinction between using hands "repetitively" as opposed to "constantly"/ "frequently")).

///

1      Moreover, although the ALJ stated that his residual functional capacity
2 assessment included "*greater* . . . manipulative limitations" than the "other" state
3 agency medical consultants (AR 27) (emphasis added), the ALJ did not say that
4 such "greater" limitations were as restrictive as the manipulative limitation in Dr.
5 Singh's Opinion. To the extent the ALJ's limitation to "frequent handling"
6 reflects only manipulative limitations that are *less* restrictive than Dr. Singh's
7 Opinion, the ALJ implicitly rejected the more restrictive portion of Dr. Singh's
8 Opinion without any explanation. Ultimately, the ALJ's failure adequately to
9 explain the weight given to Dr. Singh's Opinion was legal error. See Sawyer v.
10 Astrue, 303 Fed. Appx. 453, 455 (9th Cir. 2008) (ALJ required to explain weight
11 given to the findings of state agency medical consultants); see also Vincent v.
12 Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (An ALJ must provide an
13 explanation when he rejects "significant probative evidence.") (citation omitted).
14      Second, this Court cannot conclude that the vocational expert would have
15 opined (or that the ALJ relying upon such opinion would have determined at step
16 five) that plaintiff could perform work which exists in significant numbers in the
17 national economy if the ALJ's hypothetical question properly accounted for Dr.
18 Singh's limitation on "[r]epetitive" handling. For example, two of the three
19 representative occupations – *i.e.*, small products assembler and electronics
20 assembler – each require the performance of "repetitive or short-cycle work" (see
21 DOT § 706.684-022 [Assembler, Small Products I]; DOT § 729.687-010
22 [Assembler, Electrical Accessories I]) – which appears to exceed plaintiff's need
23 to avoid "repetitive" handling. Nonetheless, since the vocational expert
24 essentially denied that there was any conflict between the DOT and his testimony
25 regarding the requirements of the two representative occupations (AR 65), neither
26 the vocational expert nor the ALJ provided any persuasive explanation for the
27 deviation. Moreover, as plaintiff notes (and defendant does not dispute), the third
28 representative occupation (*i.e.*, cashier II) requires a level of reasoning (*i.e.*, Level

3") which, without explanation, apparently exceeds plaintiff's limitation to work involving "simple, routine and repetitive tasks." (Plaintiff's Motion at 7-8; Defendant's Motion at 3; DOT § 211.462-010 [Cashier II]); see, e.g., Zavalin, 778 F.3d at 847 (holding that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning"). Accordingly, the vocational expert's testimony, which the ALJ adopted, could not serve as substantial evidence supporting the ALJ's determination at step five that plaintiff could perform the occupations of small products assembler, electronics assembler, and cashier II. Rounds, 807 F.3d at 1003-04 (citations omitted).

Finally, the Court cannot find such error harmless as defendant points to no other persuasive evidence in the record which could support the ALJ's determination at step five that plaintiff was not disabled. See, e.g., Rounds, 807 F.3d at 1003-04 (remanding for ALJ to determine whether there was a reasonable explanation to justify relying on vocational expert's testimony where ALJ did not recognize apparent conflict between claimant's mental limitations and demands of representative occupation, and neither ALJ nor vocational expert addressed whether the conflict could be resolved) (citations omitted). Defendant argues that any error was harmless because plaintiff could "do any handling necessary" with her dominant right upper extremity. (Defendant's Motion at 2). Contrary to such assertion, however, while testifying at the hearing, the vocational expert suggested that the representative occupations of small products and electronics assemblers (*i.e.*, "bench work") could not be performed with only one hand (*i.e.*, they required "bi-manual" handling). (AR 63). Therefore, the Court cannot find that the ALJ's errors were harmless.

///
///
///

V.     CONCLUSION[2]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[3]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 1, 2016

                                            /s/
                              Honorable Jacqueline Chooljian
                              UNITED STATES MAGISTRATE JUDGE

---

[2]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[3]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, "additional proceedings can remedy defects in the original administrative proceeding. . . ." Garrison, 759 F.3d at 1019 (citation and internal quotation marks omitted).